OPINION
{¶ 1} Appellant, Chris Maurer, appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of the State Personnel Board of Review ("board") that upheld the decision of appellee, Franklin County Treasurer, to terminate appellant's employment. Appellant assigns a single error: *Page 2 
 WHETHER THE DECISION OF THE LOWER COURT AFFIRMING THE ORDER OF THE STATE PERSONNEL BOARD OF REVIEW WAS AN ABUSE OF DISCRETION INSOFAR AS THE ORDER OF THE BOARD UPHOLDING THE REMOVAL OF CHRIS MAURER FROM HIS POSITION WAS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND WAS NOT IN ACCORDANCE WITH LAW.
Because reliable, probative, and substantial evidence supports the board's order, and the order is in accordance with law, we affirm.
 {¶ 2} According to the evidence presented at the hearing before the board's Administrative Law Judge ("ALJ"), appellant began employment with appellee in December 1999, working in public relations and special products, but at the time of the incident subject of this appeal he served as a tax collector in the Delinquent Tax Division of appellee's office.
 {¶ 3} On September 8, 2005, pursuant to his employment with appellee, appellant was assigned to work at appellee's "booth" at the Reynoldsburg Tomato Festival from 4:00 p.m. to 9:00 p.m. Although designated a "booth," in reality the set-up included a long table with two chairs behind it, separated by approximately 18 inches from tables to the right and left of appellee's table. To appellee's right was the Catalyst Church booth; a middle-aged man and woman began working at the church booth after appellant arrived at appellee's booth.
 {¶ 4} At approximately 7:00 p.m., Faith and Jennifer Thoms arrived to staff the Catalyst Church booth. Both in their early 20s, they were at the festival not only to speak with persons who came to the booth but to interact with children through some of the *Page 3 
games at their booth. After introductions and brief conversation with appellant and his co-worker, Billie Grier, Faith and Jennifer turned their focus to their booth.
 {¶ 5} While Faith was engaged in play with some children, appellant came to the church booth and sat in one of the chairs. Appellant began playing with the bubble gun that was there for children's entertainment and, as a result, the liquid or bubbles from the gun spilled onto his hands and a map he had. Appellant went to Faith and wiped them on her thigh. After calling Faith's sister-in-law Jennifer to him, he wiped the map on Jennifer's thigh and on her skirt; she told him to stop. The two women attempted to resume their activities, but appellant again called Jennifer over to him. He put his hand up the side of her above-the-knee skirt and then wiped his soapy hands down her thigh and her calf. Faith intervened, standing between them while she answered a phone call, and told him to stop. Meanwhile, the woman Jennifer had been speaking with walked away after witnessing appellant's actions. During his time at their booth, appellant repeatedly talked about wanting a massage and inquired who would give him one.
 {¶ 6} Ultimately, appellant got up from the chair in the church's booth to put candy wrappers in the trash, and both women sat in the chairs so appellant could no longer occupy them. Appellant's co-worker, Billie Grier, was not present during the incident, as appellant had sent her out of the booth area for various reasons. When Grier returned, Jennifer and Faith told her to tell appellant they were underage so he would leave them alone. Grier advised that supplying appellant with such information probably would not help, as women in the office did not trust him with their teenage daughters.
 {¶ 7} Later that evening, Faith told a friend who came to help at the booth what had occurred. She then told her parents and Jennifer's husband. Following a suggestion *Page 4 
that she advise the treasurer's office of the incident, Jennifer reported it the following morning. Susan Hamilton investigated the incident on behalf of appellee and obtained formal statements from both Faith and Jennifer Thoms. On completing her investigation, she wrote a summary that recommended appellant's immediate termination. After discussions with the treasurer, Hamilton mailed appellant a notice of pre-disciplinary hearing, advising "it has been alleged that you acted and spoke inappropriately and thus sexually harassed two women at the Reynoldsburg Tomato Festival on Thursday, September 8, 2005 between the hours of 7:00 p.m. and 9:00 p.m." The letter further informed appellant that his conduct violated R.C. 124.34(A) because "it constitutes immoral conduct, discourteous treatment of the public, mistreatment of the public and sexual harassment * * *." Appellant was placed on paid administrative leave.
 {¶ 8} Following a September 15 hearing, the treasurer issued an order of removal, terminating appellant's employment with appellee, effective September 23. The order pointed out both that appellee was paying appellant, at the time of the incident, to work at appellee's booth at the festival and that appellant previously was disciplined for engaging in inappropriate behavior. Finally, the order stated appellant's conduct at the festival constituted "immoral conduct, discourteous treatment of the public, mistreatment of the public and sexual harassment in violation of R.C. 124.34 and also in violation of Office policies."
 {¶ 9} Appellant appealed to the board, where an ALJ conducted a hearing and issued a report and recommendation. The ALJ accepted the testimony of Faith and Jennifer Thoms, found appellant's testimony on his own behalf to lack credibility, and concluded appellee sustained its burden of proving the pertinent allegations in the *Page 5 
removal order. Accordingly, the ALJ determined appellee did not abuse its discretion in separating appellant from employment with that office. Following consideration of appellant's objections, the board adopted the ALJ's report and recommendation and affirmed the removal that terminated appellant's employment with appellee.
 {¶ 10} Appellant appealed to the Franklin County Court of Common Pleas, contending: (1) reliable, probative, and substantial evidence does not support the board's decision adopting the findings of fact and conclusions of law of the ALJ concerning appellant's actions toward the public, and the decision is not in accordance with law, (2) reliable, probative, and substantial evidence does not support the board's decision adopting the ALJ's conclusion that appellant's actions warranted termination because of his prior sexual harassment training, and the decision is not in accordance with law, and (3) the board wrongly adopted the ALJ's decision to deny appellant's motion to exclude evidence.
 {¶ 11} In affirming the board's order, the common pleas court observed that appellant's argument about the lack of reliable, probative, and substantial evidence to support the board's order in effect urged the court to overturn the credibility determinations the ALJ made, as the evidence before the ALJ supported each of the findings and conclusions in her report. The common pleas court, however, did not find any reason to disagree with the ALJ's credibility determinations. Moreover, because appellant's mistreatment of the public was a major offense in appellee's progressive discipline policy that permitted appellant's immediate discharge from employment, the court concluded appellant's conduct toward Jennifer and Faith Thoms warranted termination of his employment with appellee. *Page 6 
 {¶ 12} Appellant appeals, assigning a single error. Within that assignment of error, appellant asserts three issues: (1) whether reliable, probative, and substantial evidence supports the board's order; (2) whether the common pleas court erred in affirming the board's order and concluding that appellant's conduct warranted immediate termination; and (3) whether the common pleas court erred in affirming the board's order that overruled appellant's motion to exclude evidence prior to the record hearing.
 {¶ 13} The General Assembly granted adjudicatory power to the board under R.C. 124.03 and 124.34. Pursuant to those statutes, the board is authorized to hear an employee's appeal from an appointing authority's removal order and to "affirm, disaffirm, or modify" the order. In enacting the statutes, the General Assembly granted the board broad powers to review an appointing authority's decision and to disaffirm an employee's discharge not only where the appointing authority acted arbitrarily, unreasonably, or unlawfully, but also where the board finds in an independent review that the decision regarding discharge is improper or unnecessary. State ex rel. Ogan v. Teater (1978),54 Ohio St.2d 235, 245, reaffirmed, Jones v. Franklin Cty. Sheriff (1990),52 Ohio St.3d 40, 43; Ohio State Univ. v. Kyle, Franklin App. No. 06AP-168,2006-Ohio-5517, at ¶ 23. See, also, Beeler v. Franklin Cty. Sheriff
(1990), 67 Ohio App.3d 748, 752 (stating "[c]ourts have interpreted R.C.124.03 to provide great latitude to the [board] to alter decisions of appointing authorities").
 {¶ 14} In cases of removal for disciplinary reasons, R.C. 124.34
permits an employee or an appointing authority to appeal a decision of the board to the court of common pleas; R.C. 119.12 sets forth the procedure to be followed in such an appeal. According to R.C. 119.12, the common pleas court may affirm the board's decision if, *Page 7 
upon its consideration of the entire record and any additional evidence the court admits, the court finds not only that reliable, probative, and substantial evidence supports the board's decision, but that the decision is in accordance with law. R.C. 119.12; Univ. of Cincinnati v.Conrad (1980), 63 Ohio St.2d 108, 110-111; Andrews v. Bd. of LiquorControl (1955), 164 Ohio St. 275, 280; Gallagher v. Ross Cty.Sheriff, Franklin App. No. 06AP-942, 2007-Ohio-847, at ¶ 13. "Reliable" evidence is dependable evidence that has a reasonable probability of being true; "probative" evidence is relevant evidence that tends to prove the issue in question; "substantial" evidence is evidence with some weight, having importance and value. Id., citing Our Place, Inc. v.Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, 571.
 {¶ 15} The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" Lies v. Veterinary Med. Bd. (1981),2 Ohio App.3d 204, 207, quoting Andrews, at 280; Kyle, at ¶ 26. The findings of the agency are not conclusive, but the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts. Conrad, at 111; Gallagher, at ¶ 14;Kyle, at ¶ 27. See, also, Jones, at 43, citing Graziano v. AmherstExempted Village Bd. of Edn. (1987), 32 Ohio St.3d 289, 293 (stating "due deference must be accorded to the findings and recommendation of the [ALJ] * * * because it is the [ALJ] who is best able to observe the demeanor of the witnesses and weigh their credibility").
 {¶ 16} The determination of whether reliable, probative, and substantial evidence supports the board's decision is primarily a question of the absence or presence of the *Page 8 
requisite quantum of evidence. Beeler, at 753, citing Andrews. See, also, Gallagher, at ¶ 16, citing Dudukovich v. Lorain Metro HousingAuth. (1979), 58 Ohio St.2d 202, 207. If the common pleas court finds after its appraisal of all the evidence that reliable, probative, and substantial evidence does not support the board's decision, or the decision is not in accordance with law, the court may reverse, vacate, or modify the board's decision. R.C. 119.12; Conrad, at 110;Andrews, paragraph one of the syllabus. Where the evidence supports the board's decision, the common pleas court must affirm the board's decision and has no authority to modify the penalty. Ogan, supra;Henry's Café, Inc. v. Bd. of Liquor Control (1959), 170 Ohio St. 233;Kyle, at ¶ 27. Under such circumstances, the common pleas court may not substitute its judgment for that of the board. Id., citingSteinbacher v. Louis (1987), 36 Ohio App.3d 68, citing Ogan, supra;Traub v. Warren Cty. Bd. of Commrs. (1996), 114 Ohio App.3d 486, 491.
 {¶ 17} An appellate court's review is more limited than that of the common pleas court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. In reviewing the common pleas court's determination of whether reliable probative, and substantial evidence supports the board's order, the appellate court's role is limited to determining whether the common pleas court abused its discretion. Id.; Gallagher, at ¶ 15, citingLorain City Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 261. On the question of whether the board's order is in accordance with the law, the appellate court's review is plenary. Id. If the common pleas court abused its discretion or committed legal error, the appellate court may reverse, vacate or modify the judgment of the common pleas court. R.C. 119.12. *Page 9 
I. Application of R.C. 119.12 Factors {¶ 18} Appellant initially contends the board's order lacks the requisite evidence to support it. Contrary to appellant's contentions, the evidence supports the ALJ's findings of fact that the board subsequently adopted.
 {¶ 19} Without question, appellant testified contrary to the testimony Jennifer and Faith Thoms presented. According to appellant, he was no more than friendly to either of them. Appellant testified he mentioned to the two women something about his chair at appellee's booth being uncomfortable, so "one of the two" said to try one of their chairs. Accepting the offer of either Faith or Jennifer to try the bubble gun, appellant sat in one of their chairs and "squirted bubbles." (Tr. 168.) As a result of using the gun, he had some of the soapy substance on his hand, as did one of the women who handed the gun to him. According to appellant, Jennifer brushed her hand off on his shorts, and he wiped his hand on her pants leg. Appellant stated the two women were laughing and smiling throughout his interaction with them.
 {¶ 20} In assessing appellant's credibility the ALJ noted inconsistencies in appellant's testimony. Specifically, the ALJ observed that although appellant first testified the Thomses asked him if he wanted to try the bubble gun, he later testified he asked if he could try it. Similarly, appellant first testified he wiped his hands on Jennifer's pants, but later testified she was wearing a skirt. He further denied telling Susan Hamilton that he never left the booth, but Hamilton's report indicates that he so stated. Based on the problems the ALJ noted in appellant's testimony, the ALJ was not arbitrary in her *Page 10 
credibility determinations. She conscientiously examined the evidence, noted the inconsistencies in appellant's testimony and based her credibility determination accordingly.
 {¶ 21} Appellant also asserts his conduct does not constitute sexual harassment. The ALJ, however, specifically addressed that issue, stating that, even without the allegations of sexual harassment, appellant's actions "can certainly be characterized as discourteous and mistreatment of the public since the Thoms[es] are members of the public." (Report and Recommendation, 9.) In response, appellant disagrees, contending his conduct, even if it were as the Thomses presented it, does not rise to the level of mistreatment of the public.
 {¶ 22} Appellant's contention is unpersuasive. According to the evidence, appellant wiped his hand on the underneath side of Jennifer Thoms' short skirt and then finished wiping his hands down her thigh and leg. Both women testified they neither invited nor condoned appellant's actions. Were appellant at the festival on his own behalf, his uninvited actions would be sufficiently distasteful. When, however, his actions are viewed in the context of his representing a county office, we can only agree with the ALJ that his conduct constituted mistreatment of the public.
 {¶ 23} Appellee's employee handbook set forth a progressive discipline policy that could be short-circuited for a major offense and could result in immediate discharge. Among the major offenses listed was mistreatment of the public. Because the ALJ properly concluded appellant's conduct could be deemed mistreatment of the public, the ALJ also properly concluded immediate discharge comported with appellee's discipline policy. Although appellant contends such a severe sanction was unwarranted in light of *Page 11 
the length of his service with appellee, appellee's policy specifically states immediate discharge may be warranted "without regard to their length of service or prior record."
 {¶ 24} Accordingly, appellant's first issue lacks merit.
II. Appellant's prior suspension and sexual harassment training {¶ 25} Appellant next contends the ALJ wrongly considered his prior suspension and the resulting harassment training he underwent as part of his employment with appellee. In particular, appellant points out that the sexual harassment training dealt with fellow employees, not the public.
 {¶ 26} In February 2004, appellant was found to have presented to an employee of appellee's office a small piece of heart-shaped Valentine's Day candy bearing the words "big boobs." At the hearing concerning his actions at the festival, appellant disputed the underlying facts of the candy incident. Appellant, however, did not pursue an available informal appeal at the time of the incident; he undisputedly was subject to a one-day suspension and underwent sexual harassment training as a result of it. The ALJ's report and recommendation alluded to the prior discipline, stating that since "Appellant Maurer was previously suspended for one day for sexual harassment and mandated to attend sexual harassment training, the Appellee was well within its discretionary authority to remove Appellant Maurer for his actions of September 8, 2005." (Report and Recommendation, 9.) Appellant contends the materials he received in the harassment training had no relevance to his actions toward a non-employee, and the ALJ's order thus is not in accordance with law.
 {¶ 27} Initially, under the relaxed evidentiary standards applied in administrative hearings, the ALJ, within her discretion, arguably could allow the evidence. 1609 Gilsey *Page 12 Investments, Inc. v. Liquor Control Comm., Franklin App. No. 07AP-1069,2008-Ohio-2795, at ¶ 12. At the least, the fact appellant was subject to prior discipline, regardless of the cause, placed into context appellee's decision to terminate appellant's employment rather than impose a lesser sanction. Most significant, however, is that the ALJ did not rely on appellant's prior misconduct to conclude appellant's actions amounted to sexual harassment, but concluded appellant mistreated the public in his actions toward the Thoms. With that premise, appellee's office disciplinary policies provided independent support for appellant's termination, as the ALJ noted. Accordingly, appellant's second issue is unpersuasive.
III. Exclusion of evidence {¶ 28} Prior to the hearing before the board, appellant requested that the ALJ exclude appellee's witnesses and documents for failure to provide them on a timely basis, but the ALJ denied the motion.
 {¶ 29} The ALJ pointed out, as appellant contends, that Ohio Adm. Code124-13-01 provides deadlines for filing a request for a witness and document list, and appellee did not comply with the rule. Although acknowledging the rules have a purpose, the ALJ observed that appellant suffered no prejudice from appellee's deviation from the rules "because the witnesses have remained the same from the predisciplinary hearing through to this hearing that there isn't any surprise. I don't think anybody's being unfairly prejudiced, so I am denying the motion." (Tr. 9.)
 {¶ 30} We cannot disagree with the ALJ's rationale. Although appellee did not comply with the rule in producing the documented evidence, all of the evidence remained the same from the pre-termination hearing to the hearing before the board. Appellant *Page 13 
produced nothing to suggest appellee's failure to earlier turn over the document or witness list prejudiced him; nor did he request a continuance of the hearing to review the materials that were untimely produced. In light of those factors, the ALJ did not abuse her discretion in denying appellant's motion.
 {¶ 31} Appellant's third issue is unpersuasive.
 {¶ 32} Because the arguments appellant posits in support of his single assignment of error lack merit, we overrule the assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
KLATT and FRENCH, JJ., concur. *Page 1